UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 11-01165-TLM |
| DWH I, LLC, ) | |
| ) | Chapter 11 |
|        Debtor. ) | |
| _____ ) | |
| ) | |
| IN RE ) | |
| ) | Case No. 11-01167-TLM |
| Pittsfield DWH, LLC, ) | |
| ) | Chapter 11 |
|        Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**

Before the Court are the applications of debtors in possession DWH I, LLC ("DWH") and Pittsfield DWH, LLC ("Pittsfield") to employ attorney Joseph Meier and the law firm Cosho Humphrey, LLP ("Counsel") in the above-referenced chapter 11 bankruptcy cases.[1] The U.S. Trustee ("UST") objected to the applications. The matters came before this Court in a consolidated hearing on October 17, 2011, and were then taken under advisement.

Having considered the submissions and arguments of the parties, the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 1

record, and the applicable authorities, the Court issues its findings of fact and conclusions of law in this Memorandum of Decision. *See* Fed. R. Bankr. P. 7052; 9014.

**FACTS**

On April 21, 2011, DWH, Saloon Beverage, Inc. ("Saloon Beverage"), and Pittsfield filed petitions for relief under chapter 11, Case Nos. 11-01165-TLM, 11-01166-JDP, and 11-01167-TLM, respectively.[2] Bankruptcy Judge Jim D. Pappas presides over the Saloon Beverage case.[3]

DWH and Pittsfield are each single-member limited liability companies wholly owned by Floyd Acquisitions LLC ("Floyd Acquisition").[4] At the time of filing, DWH operated two restaurants – one in New York and another in Connecticut – under the name Dakota Steakhouse. Based on DWH's most recent monthly operating reports and the representations in Counsel's affidavits, it appears that those restaurants are no longer in operation.[5] Pittsfield currently

---

[2] For clarity when citing to the record, the Court will identify the case in which a particular document is found by using "DWH, Doc. No. __," or "Pittsfield, Doc. No. __."

[3] On April 25, 2011, Counsel filed a motion to jointly administer the Pittsfield and Saloon Beverage cases with the DWH case. A hearing on the motion was set in the DWH case for July 18, 2011, but was subsequently vacated when it was discovered that the motion and hearing had not been properly noticed. The motion has not been re-noticed for hearing.

[4] The membership interests in DWH and Pittsfield comprise the entirety of Floyd Acquisition's assets.

[5] According to the monthly operating reports, DWH has generated no revenue since July
(continued...)

MEMORANDUM OF DECISION - 2

operates a restaurant in Massachusetts, also under the name Dakota Steakhouse.

Saloon Beverage is a subchapter C corporation wholly owned by DWH. It operates two restaurants in Vermont under the name Sirloin Saloon.

In January 2009, DWH, Pittsfield, and Saloon Beverage entered into a management agreement, whereby DWH was appointed manager over the day-to-day operations and businesses of the five restaurants.[6] DWH, Doc. No. 67. Under the agreement, all revenue generated from the restaurants is received by DWH and then used by DWH to pay the expenses of all three debtor entities. As consideration for its management services, DWH is paid an annual fee equal to a percentage of DWH's general and administrative expenses, which is calculated based on the amount of gross revenue attributable to the Pittsfield and Saloon Beverage restaurants. Susan Schulze-Claasen signed the agreement in her separate capacities as managing member of DWH, president of Saloon Beverage, and managing member of Pittsfield.[7]

Counsel represented at hearing that DWH, Saloon Beverage, and Pittsfield are co-debtors on two debts – one owed to DWH II, LLC in the amount of

---

[5](...continued)
2011. *See* DWH, Doc. Nos. 74-1 (July), 80-1 (August), and 92-1 (September)

[6] The management agreement indicated that Floyd Acquisition, though not a party to the agreement, assigned all management and administrative responsibilities to DWH, which presumably included all rights and responsibilities related to the operation of Pittsfield.

[7] Ms. Schulze-Claasen is also the managing member of Floyd Acquisition.

MEMORANDUM OF DECISION - 3

$624,000, which is secured by certain personal property and cash, and another to U.S. Foodservice for approximately $150,000.[8] The three debtor entities have several other common creditors (in addition to uncommon creditors), however Counsel at the hearing represented that they are not co-debtors on any other obligations.[9] Although there are no inter-company debts among the three debtors, DWH scheduled a claim in favor of Ms. Schulze-Claasen for $25,441.38.

On April 25, 2011, DWH and Pittsfield filed applications to employ Counsel in their respective cases.[10] DWH, Doc. No. 9; Pittsfield Doc. No. 10. Each application was accompanied by an affidavit of Counsel as required by Fed. R. Bankr. P. 2014.[11] DWH, Doc. No. 9-1; Pittsfield Doc. No. 10-1. Therein, Counsel asserted that it represented no interest adverse to the debtors in possession, or their respective bankruptcy estates. Counsel also disclosed that it

---

[8] In its schedules, DWH listed the U.S. Foodservice claim as $164,952.00, while Pittsfield scheduled it as $149,064.02. The reason for this discrepancy is unclear.

[9] DWH and Pittsfield listed several claims on which they purport to be co-debtors with each other and Saloon Beverage. However, at the hearing, Counsel represented that the debtor entities were only in fact co-debtors on the DWH II and U.S. Foodservice claims, and that amended schedules reflecting that fact would be forthcoming.

[10] Saloon Beverage also filed an application to employ Counsel in its case, Case No. 11-01166-JDP. That matter came on for hearing before Judge Pappas on October 5, 2011, and is currently under advisement. As Judge Pappas presides over the Saloon Beverage chapter 11 bankruptcy case, no opinion is expressed herein concerning Counsel's eligibility to be employed, or to recover compensation and expenses, as counsel for the debtor in possession in that case.

[11] Rule 2014 requires that an application for employment "be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

MEMORANDUM OF DECISION - 4

was providing legal services to all three debtor entities – DWH, Saloon Beverage, and Pittsfield – and that a request to consolidate the cases into one proceeding was anticipated.

On August 10, 2011, Counsel filed a second affidavit in both the DWH and Pittsfield cases, supplementing the April 25 applications for employment. In the affidavit, Counsel disclosed that of the $35,000 it had been paid by DWH, Saloon Beverage, and Pittsfield, $15,000 had come from Pittsfield, $10,325 from DWH, and $11,675 from Saloon Beverage. Counsel represented that from each of those three payments, $2,805.50 had been applied to prepetition attorney's fees and the case filing fee. Counsel further averred that the balance of those payments, totaling $26,583.50, was being held in trust on behalf of each debtor.[12]

On September 1, 2011, the UST filed an objection to DWH and Pittsfield's applications to employ Counsel.

**DISCUSSION AND DISPOSITION**

Subject to court approval, a chapter 11 debtor in possession may employ professional persons, such as an attorney, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. §§ 327(a) & 1107(a). The UST contends that Counsel, by representing all three debtor entities, represents an adverse interest that disqualifies it from being employed by either

---

[12] This is consistent with the Rule 2016(b) disclosures of compensation filed by Counsel.

MEMORANDUM OF DECISION - 5

DWH or Pittsfield.

The burden is on the applicant and the proposed professional to prove the absence of an adverse interest and to establish the propriety of the suggested employment. *In re Ashbaugh & Hall*, 2005 WL 4705070, at *5 (Bankr. D. Idaho Jan. 6, 2005); *In re Thompson*, 2000 WL 33716961, at *5 (Bankr. D. Idaho Mar. 1, 2000).

The term "adverse interest" is not defined in the Bankruptcy Code. Courts have defined what it means to hold an adverse interest as (1) possessing or asserting any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possessing a predisposition under circumstances that render such a bias against the estate. *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006). That any adverse interest exists is sufficient for disqualification, and the bankruptcy court need not weigh, measure, or evaluate the degree of the conflict. *In re Greystone on Payette, LLC*, 410 B.R. 900, 903 (Bankr. D. Idaho 2009); *In re Larson*, 04.1 I.B.C.R. 20, 23 (Bankr. D. Idaho 2004); *In re Dugger*, 99.1 I.B.C.R. 30, 32 (Bankr. D. Idaho 1999).

Based on the facts presented in this case, the Court has concerns regarding potential conflicts that could give rise to disputes in which the estates of DWH,

MEMORANDUM OF DECISION - 6

Pittsfield, and Saloon Beverage would be rival claimants.

First, because the revenue from all three of the debtors has been, and continues to be, swept into DWH, there is the potential for disputes between the debtors' respective estates (and their creditors, common and uncommon) as to their interests in any such funds. While Counsel maintains that DWH has administrative employees who account for the expenses and income of each debtor, that does not necessarily ensure against potential disagreement regarding the accounting – disagreement that would place Counsel in a conflicted position. Moreover, it is plausible that Pittsfield's affiliation with DWH may temper the zeal with which it scrutinizes the accounting in the first instance, to the detriment of Pittsfield's creditor body. This is also true as to the examination of any prepetition transactions between the debtor entities that could potentially be targeted as fraudulent or preferential transfers.[13]

---

[13] The Court appreciates that treatment of debtors as separate parties with divergent interests may appear formalistic when in reality the entities are essentially owned and managed by the same individual – Ms. Schulze-Claasen. Indeed, recall Ms. Schulze-Claasen signed the agreement on behalf of all three debtors. However, absent substantive consolidation, the Court is constrained to respect the distinct nature of the debtors in possession and their respective bankruptcy estates. The nature of the bankruptcy estate, which emphasizes the rights of the creditors and places a debtor in possession in a fiduciary relationship, compels such treatment. As noted by Bankruptcy Judge Alfred C. Hagan in *In re Bliss Valley Foods, Inc.*,

> [R]epresentation of a debtor in a Chapter 11 proceeding is a situation which has little similarity with any other client-professional relationship. A bankruptcy estate is not a typical client. A Chapter 11 estate is not composed solely of the equity security holders and the officers of the debtor-in-possession. The rights of the creditors must also be considered as part of the estate entity. Where loyalty is

(continued...)

MEMORANDUM OF DECISION - 7

Additionally, the management agreement itself raises issues. The rights and responsibilities created by that agreement could potentially put the debtors at odds with one another. For example, under the agreement DWH can be held liable to Pittsfield and Saloon Beverage for willful misconduct, negligence, dishonesty or expenditures in excess of DWH's authority as manager. DWH, Doc. No. 67 at 2. The agreement also imposes on DWH the duty "to defend, indemnify and hold Pittsfield and [Saloon Beverage] harmless from and against any and all loss or damage resulting from [DWH's] operation of the Business as long as such loss or damage is not due to any act or omission of Pittsfield and [Saloon Beverage]." *Id.* Although Counsel represented that no causes against DWH currently exist under these provisions, in making that determination, Counsel, as attorney for both DWH and Pittsfield, is in the untenable position of evaluating whether its client, Pittsfield, has rights against its other client, DWH.

Counsel could also be placed in a position of conflict regarding the assumption or termination of the management agreement. In considering such a

---

[13](...continued)
owed in different degrees to these competing interests, or the possibility of such is present, the relationship of client and professional cannot be approved.

89 I.B.C.R. 4, 5-6 (Bankr. D. Idaho 1989); *see also Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994) (noting that debtor-in-possession stands in a fiduciary relationship to the estate's creditors); *Anand v. China Int'l Trust and Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991) ("Officers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties.").

MEMORANDUM OF DECISION - 8

decision the interests of DWH and Pittsfield's estates may not necessarily align, depending on the value of DWH's management services to the Pittsfield bankruptcy estate. It may be that assumption of the agreement would be in the best interests of one debtor's estate, but would be a detriment to the other. In such a case, Counsel's representation of both debtors could conceivably taint its ability to provide objective advice concerning any proposed treatment of the agreement, or dispute thereunder, in these bankruptcy proceedings.

In short, debtors, and the estates for which they act as fiduciaries, need separate counsel who can fairly and fully advise them as to the issues surrounding the management agreement and all other aspects of the bankruptcy case, free from the divided loyalty that would attend dual representation.

Lastly, Counsel's representation of Saloon Beverage, a company in which DWH is the sole equity holder, is problematic. As an equity security holder, DWH is a party in interest in the Saloon Beverage bankruptcy case. The UST is correct that if Saloon Beverage proposes a plan that is not accepted by its unsecured creditors, Counsel may be required to either advocate for confirmation of a plan that effectively eliminates DWH's equity interest in Saloon Beverage or represent both DWH and Saloon Beverage in negotiating a new value payment for equity in a reorganized Saloon Beverage in order to satisfy § 1129(b)(2)(B)

MEMORANDUM OF DECISION - 9

(commonly referred to as the "absolute priority rule") and confirm a plan.[14] In either case, Counsel would be left advocating for competing interests.

DWH, Pittsfield, and Counsel have not persuaded this Court that Counsel does not represent interests adverse to the debtors' estates. As one court explained:

> It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he as a potential conflict.

*Interwest Bus. Equip., Inc. v. United States Tr. (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 316 (10th Cir. 1994) (quoting *In re McKinney Ranch Assoc.*, 62 B.R. 249, 254 (Bankr. C.D. Cal. 1986)). The Court concludes that, for the reasons stated above, Counsel has not shown in this case that it could fully and fairly discharge its duties to DWH, Saloon Beverage, and Pittsfield, simultaneously.[15]

---

[14] Section 1129(b)(2)(B) provides that if the unsecured creditors of a debtor corporation do not accept a proposed plan, and are not paid the full amount of their allowed claims, no holder of any claim or interest that is junior to those unsecured creditors (which includes the equity security holders) may receive or retain any property on account of that junior claim or interest. The Ninth Circuit has recognized, however, a judicially crafted "exception" to this rule that allows, under certain circumstances, stockholders in the bankrupt business to receive stock in the reorganized debtor in exchange for contributions of added capital (new value). *See Bonner Mall P'ship v. U.S. Bancorp Mortg. Co. (In re Bonner Mall P'ship)*, 2 F.3d 899 (9th Cir. 1993).

[15] The Court emphasizes that this is not a critique of Counsel, or a prediction that it would cross ethical bounds if presented with a conflict. It is simply an acknowledgment that the disinterestedness and adverse interest requirements of § 327(a) are designed to avoid the risk.

MEMORANDUM OF DECISION - 10

The strictures of § 327(a) thus preclude approval of Counsel's employment.

**CONCLUSION**

Based on the reasons set forth above, DWH's and Pittsfield's applications to employ Counsel will be denied.

The UST shall submit an appropriate order consistent with this Decision.

DATED: November 8, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 11